The plaintiff in his return, excepts to relator's application upon the ground that the notice required by rule 15 of this court was not given by relator to the judge or to the plaintiff or to his counsel. The rule has been amended so that a failure to give notice is not now a cause for dismissing the proceeding. 152 La. vii.

For the reasons stated, the rule to show cause heretofore issued herein is recalled and vacated, and relator's application for writs of prohibition and mandamus are denied, at his cost.

(116 So. 585)

No. 26894.

**PRATT v. DALGARN.**

March 12, 1928. Rehearing Denied April 9, 1928.

Hubert M. Ansley, of New Orleans, for appellant.

Dart & Dart, of New Orleans, for appellee.

O'NIELL, C. J. The plaintiff sued to annul several tax sales of four squares of ground forming part of what was known as the "Milne Tract," fronting on Lake Pontchartrain, between Milneburg and Spanish Fort. The court gave judgment in favor of the plaintiff, annulling the tax sales. The de-

fendant has appealed from the decision. The plaintiff died on the 29th of last November, while the case was pending on appeal, and his executors have been made parties.

The four squares of ground in contest are designated by the Nos. 3453, 3624, 3649 and 3650 on a map of the "Milne Tract," and appear on the map as if separated by streets, but in fact they are in a swamp, which was only recently drained, and the land is yet covered with its original growth of underbrush. The squares in contest have never had any buildings or improvements on them, or been under cultivation. They form a continuous tract of land, without any evidence on the ground of their being separated by streets or roads, or show of being marked off as city squares.

Square 3649 was sold by the tax collector to the defendant, Dalgarn, on June 18, 1910, for state taxes assessed to "Unknown" for the year 1909.

Square 3650 was sold by the tax collector to one J. G. Bischop on June 18, 1910, for state taxes assessed to "Unknown" for the year 1909, and was transferred by Bischop by a quitclaim deed to the defendant, Dalgarn, on November 16, 1911.

Square 3453 was sold by the tax collector to the defendant, Dalgarn, on April 25, 1921, for city taxes assessed to "Unknown" for the year 1918; and the same square was sold again to Dalgarn on October 15, 1921, for state taxes assessed to "Unknown" for the year 1920.

Square 3624 was sold by the tax collector to Dalgarn on April 25, 1921, for city taxes assessed to "Unknown" for the year 1918.

At the time of the tax sales, Dr. Pratt owned that part of the Milne tract which is described in his deeds as follows:

1. A certain tract of ground in the parish of Orleans, fronting on Lake Pontchartrain and lying between Spanish Fort and Milneburg, designated by the letter "F" in an act of partition before A. Chiapello, Notary Public, on August 29, 1845, made between the heirs of the late Alexander Milne, and according to the plan by Louis Bringier, surveyor, annexed to said act of partition.

2. A certain tract of ground designated by the letter "N" on said plan annexed to said act of partition before A. Chiapello, N. P., August 29, 1845, and so designated in said act of partition, said property lying also in the parish of Orleans, between the said Bayou St. John and People's Canal, but not fronting on Lake Pontchartrain.

Dr. Pratt bought the land from the Society for the Relief of Destitute Orphan Boys on January 4, 1898. It was sold for delinquent taxes to Charles Louque on July 6, 1905, but was redeemed by Dr. Pratt on June 8, 1906. He sold it to the Provident Investment Company on October 15, 1914, and repurchased it from the investment company on February 8, 1915.

Squares 3649 and 3650 are a part of lot F, and squares 3624 and 3453 are parts of lot N on the Bringier map. Dr. Pratt therefore owned the four squares when they were assessed to "Unknown" and sold for taxes; and his title was on record.

On the assessment roll for 1909—for the taxes of which year squares 3649 and 3650 were sold under the assessment to "Unknown"—lots F and N of the Milne tract were assessed to Dr. George K. Pratt, under the following description:

"Lot 4, composed of portions A, F, L, M, and N, as follows:

"Portion F bounded on the north by Lake Pontchartrain, east by St. Anthony Ave., south by lands of Gentilly and Monroe Ave., west by Paris Ave.

"Portion N bounded on the north by Monroe avenue, east and south by lands of Gentilly, west by Bayou St. John.

"Portion A being in the 2nd Dist.

"Portion I being in the 8th & 9th wards.

"Portion M being in the 8th & 9th wards.

"Portions A, B, C, D are in the 2nd Dist.

"Portions E, I, G, N are in the 3rd Dist.

"Portions H, I, J, K, L, M are in the 3rd Dist.

"All of the above properties (Folios 234 & 235), together with the lots and portions in the 8th and 9th wards, are described according to a plan drawn by Louis Bringier, General, of

date the 7th of May, 1830, accompanying an act of partition before A. Chiapello, notary public, dated Aug. 29th, 1845.

"This property enlisted and enrolled as above, on folios 113 & 114, and commonly [known] as the Milne tract, all of which now entered, cannot and is not intended to include any property within the same limits already assessed and listed and more particularly indicated on fols. 230, 231, 232, 233, properties fronting on Bayou St. John and properties at Milneburg commencing at the lake."

Accordingly, all of the tract described as lots "F" and "N" on the Bringier map was assessed to Dr. George K. Pratt for the taxes of 1909, except such portions as were "already assessed and listed and more particularly indicated on folios 230, 231, 232, 233." Those folios, copies of which are in evidence, do not show that either of the squares in contest, or any part of lot F or N on the Bringier map, was assessed to "Unknown," or that square 3649 or 3650 was assessed as such to any one.

█ There was therefore a dual assessment of the land described as squares 3649, and 3650 in 1909; and the tax research certificate shows that the taxes assessed in the name of Dr. Pratt on lots F and N of the Bringier map, for the year 1909, were paid promptly, and that there was no sale for taxes under that assessment. Therefore, the tax sales made in 1910, under the dual assessment for the taxes of 1909, were null, and according to article 233 of the Constitution of 1898, the nullity was not cured by the prescription of three years.

Referring now to the sales of square 3453, in 1921, for the taxes of 1918 and of 1920, and the sale of square 3624, in the same year, for the taxes of 1918, the assessment rolls in evidence show that the whole tract described as lots "F" and "N" of the Bringier map was assessed to Dr. Pratt in both of those years, under the same description that appeared on the assessment rolls for 1909. The memorandum at the end of the description on the rolls of 1918 is as follows:

"This property enlisted or enrolled as above. on folios 272/273, and commonly known as the Milne tract, all of which now entered, cannot and is not intended to include any property within the same limits already assessed and listed and more particularly indicated on folios 268 to 271, property fronting on Bayou St. John and property at Milneburg commencing at the lake."

Certified copies of folios 268 to 271, inclusive, are in the record, and they do not show that square 3453 or 3624 was separately assessed for the taxes of 1918, or that any part of lot N (of which these squares are parts) on the Bringier map was assessed to "Unknown" in the year 1918.

The memorandum at the end of the description of the land assessed to Dr. Pratt as lots "F" and "N" on the Bringier map, on the assessment rolls for 1920, is as follows:

"This property enlisted or enrolled as above on folios 175/176 and commonly known as the Milne tract, all of which now entered, cannot and is not intended to include any property within the same limits above already assessed and listed and more particularly indicated on folios 171 to 174, properties fronting on Bayou St. John, properties at Milneburg commencing at the lake."

The certified copies of folios 171 to 174, inclusive, of the assessment rolls for the year 1920, in evidence in this case, do not show that square 3653, which was sold in 1921 for the taxes of 1920, was separately assessed, or that any part of lot N on the Bringier map was assessed to "Unknown" in 1920.

The plaintiff produced and filed in evidence tax receipts showing that the taxes on the whole tract assessed to him in 1918 and 1920 were paid promptly and before the date of the tax sales made in 1921, and in fact that the taxes were paid regularly every year from and including the year 1913 to the year in which this suit was filed. The tax receipts for the years previous to 1913 were lost, but the research certificates showed that the taxes were paid regularly since 1894, and that theretofore the property was exempt from

taxation because of its belonging to the Society for the Relief of Destitute Orphan Boys.

The plaintiff pleaded that the tax sales were null, not only because of the dual assessments and payment of the taxes previous to the dates of the sales, but also because there was, of course, no notice of delinquence given to Dr. Pratt under the assessments to "Unknown."

■ The defendant pleaded the prescription of three years under article 233 of the Constitution of 1898 and of 1913 (article 10, § 11, of the Constitution of 1921), and the prescription of five years under article 3543 of the Civil Code. The pleas of prescription are, of course, not applicable to the tax sales of squares 3453 and 3624, made in 1921, because the suit was filed and citation served within three years from the dates of those sales. As to the tax sales of squares 3649 and 3650, made in 1910, the prescription of three years, according to article 233 of the Constitution of 1898 and of 1913, could not cure the nullity resulting from the dual assessment, and, according to article 10, § 11, of the Constitution of 1921, could not cure the nullity resulting from the payment of the taxes on the whole tract previous to the date of the sales. No argument was made in support of the plea of prescription of five years. According to article 3543 of the Civil Code, the prescription of five years cures only informalities—not illegalities—in public sales made by a person authorized to sell at public auction. The invalidity complained of in this case was not a mere informality.

■■ The defendant, appellant, filed in this court an exception of no cause of action and a plea of prescription of ten years. The exception of no cause of action is founded upon an objection, which was urged in the district court, to the introduction in evidence of the deeds under which the plaintiff claimed title to the four squares in contest. The objection was, first, that the deed from Charles Louque to the plaintiff was irrelevant because the plaintiff did not allege and the deed did not show on its face that the squares of ground in contest were parts of the tract described in the deed, and, second, that, inasmuch as the plaintiff, in his petition, only claimed title under the deed from Charles Louque, the other deeds in the plaintiff's chain of title were not admissible. There was no merit in the objection. The plaintiff alleged that he was the owner of the four squares of ground by virtue of his deed from Charles Louque; and the testimony of the surveyors, together with the maps, shows—and it is now conceded —that the four lots were parts of the land described in the deed from Charles Louque. The other deeds introduced in evidence by the plaintiff for the purpose of showing a complete chain of title were of little or no importance, because the deed from Charles Louque was older than the oldest of the tax sales in contest. There is therefore no merit in the plea or exception of no cause of action.

■ The plea of prescription of ten years is not well founded, even as to squares 3649 and 3650, because, although the tax sales of those squares were more than ten years old when this suit was brought. the defendant did not have actual or physical possession of the property. He produced copies of two contracts of lease to W. E. Day, one lease being for squares 3649 and 3650, and the other for squares 3453 and 3624, both leases being dated April 1, 1921; but he admitted that the documents were actually signed about three years later—after this suit was filed. He explained that the reason why the leases were antedated was that Day already had a verbal lease. He did not say when the verbal lease commenced, but he left no doubt that it was not ten years before this suit was filed; for the purpose of the lease was that Day, who was a dairyman, might pasture his cattle on the land; and the defendant admitted that the land was so low and overflowed that cattle could not graze on it until the sewerage and water board had dug a canal along

St. Anthony street, which was only two years before this suit was filed.

The judgment is affirmed.